1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11  IVAN BLANCO,

12                                    Petitioner,

13  v.

14  JIM ROBERTSON, Warden,

15                                    Respondent.

Case No.:  18cv1909 CAB (AGS)

**ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS [ECF No. 4] AND DENYING CERTIFICATE OF APPEALABILITY**

16
17        Ivan Blanco ("Petitioner"), is a state prisoner proceeding pro se and in forma

18  pauperis with an Amended Petition for a Writ of Habeas Corpus filed under 28 U.S.C.

19  § 2254.  (ECF No. 4.)  Petitioner is serving a determinate prison term of fifteen years

20  following his September 26, 2014 conviction and October 31, 2014 sentence in Tulare

21  County after a guilty plea to one count of second-degree attempted murder pursuant to Cal.

22  Penal Code § 664/187(a) with an enhancement for use of a firearm during the commission

23  of a felony pursuant to Cal. Penal Code § 12022.53(b).[1]  (ECF No. 19-1.)  Petitioner does

24
25  ────────────────────
26  [1] It appears from a review of materials submitted in support of the sur-reply that Petitioner

27  is also serving a determinate prison term of four years following an October 11, 2017

28  conviction and sentence in Kern County after a guilty plea to one count of assault by a

prisoner by means of force likely to produce great bodily injury pursuant to Cal. Penal

not challenge this conviction or sentence in the instant proceeding.  Instead, Petitioner challenges the result of a prison disciplinary proceeding at Centinela State Prison in Imperial County, in which he was found guilty of possession of alcohol and which resulted in the loss of 91 days of credits.  (ECF No. 4 at 1-2; *see also* ECF Nos. 19-2, 19-3.) Petitioner claims he was deprived of due process because insufficient evidence supported the guilty finding.  (ECF No. 4 at 6-9.)  Respondent has filed an Answer and has lodged relevant portions of the state court record.  (ECF Nos. 18, 19.)  Respondent maintains that habeas relief is unavailable because (1) the Petition was filed after the statute of limitations expired and is therefore untimely and (2) the state court adjudication of Petitioner's claim on the merits is neither contrary to or an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts.  (ECF No. 18 at 9-10.)  Petitioner has filed a sur-reply, arguing he is entitled to equitable tolling and maintaining that his claim of error is meritorious.  (ECF No. 21.)

For the reasons discussed below, the Court **DENIES** the Amended Petition for a Writ of Habeas Corpus and **DENIES** a Certificate of Appealability.

## I.      RELEVANT PROCEDURAL HISTORY

On April 19, 2016, at Centinela State Prison, Correctional Officer F. Soria conducted a random search of a cell assigned to Petitioner and an inmate named Sanchez and Soria's subsequent written report reflects the following sequence of events: "I entered the cell and smelled a strong pungent odor of alcohol.  I discovered a clear plastic bag containing approximately 5 gallons of inmate manufactured alcohol (Pruno), wrapped inside a mattress on the upper bunk.  The pruno was a brownish liquid, pulpy in color with a strong odor of fermenting fruit (Crushed Apples).  No other contraband was discovered.  I disposed of the pruno by dumping it down the toilet."  (ECF No. 19-2 at 1; *see also* ECF

_____

Code § 4501(b) with a habitual criminal enhancement pursuant to Cal. Penal Code § 667(e).  (See ECF No. 21 at 21.)

No. 19-3 at 3.)  Petitioner was issued a Rules Violation Report ("RVR") for Possession of Alcohol.  (ECF No. 19-2.)

A supplement to the RVR reflects that on April 25, 2016, Petitioner was assigned a Staff Assistant named A. Sanchez, who indicates that "[d]ue to inmate Blanco's inability to understand and speak the English language I was assigned as his translator."  (*Id.* at 3; *see also* ECF No. 19-3 at 3.)  A hearing was held on April 27, 2016 at Centinela, at which Petitioner requested an inmate witness at his hearing, his cellmate Sanchez, but the request was not granted.  (ECF No. 19-3.)  The hearing report reflects that: "SHO determined that the witness had no relevant or additional information, however; [sic] the following statement was stipulated as agreed by inmate and SHO. [] If present SANCHEZ would state the alcohol was his (SANCHEZ) and Blanco did not know anything about it."  (*Id.* at 5.)  The report also reflects: "Inmate BLANCO stated, I did not know nothing about the alcohol."  (*Id.*)  Petitioner was found guilty "based on a preponderance of evidence," and the report notes: "It is clear BLANCO willfully had access to the Alcohol, therefore; [sic] had constructive possession of the Alcohol."  (*Id.*)   Petitioner was assessed several penalties, including a credit loss of 91 days, a loss of pay for 90 days,[2] a requirement to attend AA/NA meetings, and referral to a substance abuse program.  (*Id.* at 6-7.)

Petitioner's second level appeal was denied on July 11, 2016.  (ECF No. 4 at 33-35.) Petitioner's third level appeal was denied on October 4, 2016, and the written decision included the following statement: "This decision exhausts the administrative remedy available to the appellant within CDCR."  (ECF No. 4 at 36-37; *see also* ECF No. 19-4 at 2.)  As the California Court of Appeal later noted: "Blanco then unsuccessfully challenged the disciplinary decision in the superior court by a petition for writ of habeas corpus (filed Feb. 6, 2017; denied Mar. 6, 2017), two petitions for rehearing of the order denying that

---

[2] While Petitioner was assessed a loss of pay for 90 days, the hearing report also noted that Petitioner did not have a paid work assignment at that time.  (*Id.* at 7.)

petition (filed Apr. 18, 2017 & May 30, 2017), and an amended petition for writ of habeas corpus (filed Apr. 3, 2018; denied Apr. 30, 2018)." (ECF No. 19-8 at 1, *In re Ivan Blanco on Habeas Corpus*, D074017 (Cal. Ct. App. May 25, 2018).) On May 18, 2018, Petitioner constructively filed a habeas petition in the California Court of Appeal again challenging the result of the prison disciplinary proceeding and contending that insufficient evidence supported the guilty finding.[3] (ECF No. 19-7.) On May 25, 2018, the California Court of Appeal denied the petition, reasoning that the petition was untimely and lacked merit. (ECF No. 19-8, *In re Ivan Blanco on Habeas Corpus*, D074017 (Cal. Ct. App. May 25, 2018).) On May 30, 2018, Petitioner constructively filed a habeas petition in the California Supreme Court raising the same contention presented to the state appellate court. (ECF No. 19-9.) On July 11, 2018, the California Supreme Court denied the petition in an order that stated in full: "The petition for review is denied." (ECF No. 19-10, *In re Ivan Blanco on Habeas Corpus*, Case No. S249208 (Cal. July 11, 2018).)

On July 29, 2018, Petitioner constructively filed a federal habeas petition in this Court and on September 10, 2018, filed an Amended Petition, the latter filing being the operative pleading in this action. (*See* ECF No. 1 at 62, ECF No. 4.) On February 28, 2019, Respondent filed a motion to dismiss, contending the federal Petition was "false and frivolous" and dismissal was appropriate because Petitioner was found not guilty of possession after rehearing, the matter was dismissed and no discipline was imposed. (ECF No. 12 at 4.) On June 20, 2019, the Court issued an Order adopting a May 31, 2019 Report and Recommendation and denying the motion to dismiss, holding that Respondent "erroneously conflate[d]" two separate disciplinary incidents and charges, both for

---

[3] While that habeas petition is filed-stamped May 23, 2018, the constructive filing date for federal habeas purposes is May 18, 2018, the date Petitioner mailed it to the state court. (ECF No. 19-7 at 47); see Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003) ("Under the 'mailbox rule,' a pro se prisoner's filing of a state habeas petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court.")

possession of alcohol, noting that Petitioner was ultimately found not guilty of the second and later charge, he was found guilty of the initial charge, that challenged in the Petition, and suffered a penalty of 91 days loss of credits as a result of that decision.  (ECF No. 16 at 4; *see also* ECF No. 15.)  Respondent filed an Answer on August 29, 2019 and lodged portions of the record.  (ECF Nos. 18, 19.)  On September 23, 2019, Petitioner filed a sur-reply.  (ECF No. 21.)

## II.   FACTUAL BACKGROUND

The facts recounted below concerning Petitioner's RVR and disciplinary hearing are taken from the California Court of Appeal decision denying the state petition for a writ of habeas corpus.  (ECF No. 19-8, *In re Ivan Blanco on Habeas Corpus*, D074017 (Cal. Ct. App. May 25, 2018).)  The state court factual findings are presumptively reasonable and entitled to deference in these proceedings.  *See Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

While Ivan Blanco was incarcerated at a prison in Imperial County in April 2016, a correctional officer searched the cell Blanco shared with another inmate and found in the mattress of the upper bunk a plastic bag containing approximately five gallons of inmate-manufactured alcohol.  Blanco was issued a rules violation report for possession of alcohol.  (Cal. Code Regs., tit. 15, § 3016, subd. (b).)[1]  At the disciplinary hearing, Blanco pled not guilty and stated he "did not know nothing about the alcohol."  It was stipulated that had Blanco's cellmate been called as a witness, he would have testified the alcohol was his and Blanco knew nothing about it.  Based on the correctional officer's report, the hearing officer found Blanco had constructive possession of the alcohol and therefore was guilty of the charged violation, and assessed a forfeiture of 91 days of credits.

[FN1] The rules violation report cites subdivision (a) of section 3016 of title 15 of the Code of Regulations, which forbids inmates to "use, inhale, ingest, inject, or otherwise introduce into their body, any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff."  This appears to be a typographical error because the "SPECIFIC ACT" listed on the report is "Possession of Alcohol"

1
2
   and the narrative portion of the report makes no reference to the
   introduction of alcohol into Blanco's body.

3
4
(ECF No. 19-8 at 1, *In re Ivan Blanco on Habeas Corpus*, D074017 (Cal. Ct. App. May 25, 2018).)

5
## III. **<u>DISCUSSION</u>**

6
7
8
9
10
11
12
13
14
   In the sole enumerated claim in the Amended Petition, Petitioner contends that he has been deprived of due process because "no evidence support [sic] the hearing officer guity [sic] finding," requests this Court reweigh the evidence and asserts that the superior court denial of his petition constituted an abuse of discretion. (ECF No. 4 at 6-9.) Respondent maintains that habeas relief is unavailable because (1) the Petition was filed after the statute of limitations had run and is therefore untimely and (2) the state court adjudication of Petitioner's claim on the merits is neither contrary to or an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts. (ECF No. 18 at 9-10.)

15
16
17
18
19
20
21
22
23
24
25
26
27
28
   Petitioner presented his claim to the California Supreme Court in a habeas petition which was denied in an order that stated in full: "The petition for review is denied." (ECF Nos. 19-9, 19-10.) Petitioner previously presented his claim to the California Court of Appeal in a habeas petition; that court denied the petition as untimely and on the merits in a reasoned decision. (ECF Nos. 19-7, 19-8.) The United States Supreme Court has indicated that a presumption exists "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 584 U.S. ___, 138 S.Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.") Here, given the absence of any grounds in the record to undermine or rebut this presumption, the Court will "look through" the state supreme court's silent denial to the reasoned opinion issued by the state appellate court. *See Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect- which simply 'looks

through' them to the last reasoned decision - most nearly reflects the role they are ordinarily intended to play.") (footnote omitted) (emphasis in original).

### A.   **Standard of Review**

This Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  28 U.S.C. § 2254(d).  Pursuant to AEDPA, a state prisoner is not entitled to federal habeas relief on a claim that the state court adjudicated on the merits, unless it: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011), quoting 28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004).  With respect to section 2254(d)(2), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007), citing *Williams*, 529 U.S. at 410.  "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006), quoting 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664

(2004). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*, 562 U.S. at 102.

In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). However, "[p]risoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

## B.   <u>Statute of Limitations</u>

Respondent first contends that "Blanco is not entitled to federal habeas corpus relief because his Petition was filed after the statute of limitations on his claims elapsed." (ECF No. 18 at 9.) As an initial matter, the Court notes that Respondent previously filed a motion to dismiss contending dismissal was appropriate because the Petition was false and frivolous, which the Court denied. (*See* ECF Nos. 12, 16.) In the motion to dismiss, Respondent did not argue that the Petition was barred by the statute of limitations, despite the Court's prior order instructing Respondent to file a motion to dismiss "[i]f Respondent contends the Petition can be decided without the Court's reaching the merits of Petitioner's claims," directing "[t]he motion to dismiss shall not address the merits of Petitioner's claims, but rather shall address <u>all</u> grounds upon which Respondent contends dismissal without reaching the merits of Petitioner's claims is warranted," and specifically including as a potential assertion "that the Petition is barred by the statute of limitations." (ECF No. 7 at 2) (footnote omitted) (emphasis in original.) However, unlike an Answer, a motion to dismiss is not a responsive pleading such that a failure to raise an affirmative defense risks waiver of that defense. *See* Fed. R. Civ. Proc. 7(a), 8(c); *see also Morrison v. Mahoney*, 399 F.3d 1042, 1047 (9th Cir. 2005) (respondent did not waive affirmative defense under the Federal Rules of Civil Procedure in a federal habeas proceeding by failing to raise it in

a prior motion to dismiss, reasoning that "the State's motion to dismiss was not a responsive pleading that required the State to raise or waive all its defenses.")  Accordingly, Respondent is not precluded from raising the statute of limitations defense at this time despite failing to raise it in the motion to dismiss.  In any event, Petitioner does not appear to contest Respondent's argument concerning the availability of statutory tolling, instead asserting he is entitled to equitable tolling, which the Court addresses below.

With respect to the statute of limitations, AEDPA provides that:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

The Ninth Circuit has held that "the one-year limitations period applies to 'all applications for writ of habeas corpus' under § 2254, including those challenging state administrative actions." *Mardesich v. Cate*, 668 F.3d 1154, 1171 (9th Cir. 2012), quoting *Shelby v. Bartlett*, 391 F.3d 1061, 1064 (9th Cir. 2004); *Redd v. McGrath*, 343 F.3d 1077, 1084 (9th Cir. 2003).  "[W]hen a habeas petitioner challenges an administrative decision affecting the 'fact or duration of his confinement,' AEDPA's one-year statute of limitations

runs from when the 'factual predicate' of the habeas claims 'could have been discovered through the exercise of due diligence.' As a general rule, the state agency's denial of an administrative appeal is the 'factual predicate' for such habeas claims." *Mardesich*, 668 F.3d at 1172 (footnote and internal citations omitted), quoting 28 U.S.C. § 2244(d)(1)(D), *Shelby*, 391 F.3d at 1066, *Redd*, 343 F.3d at 1085.

Petitioner's statute of limitations began to run on October 5, 2016, the day after his final administrative appeal was denied. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (holding that Federal Rule of Civil Procedure 6(a), which instructs that: "In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included," was applicable to AEDPA's limitation period), quoting Fed. R. Civ. Proc. 6(a). As such, in the absence of tolling, Petitioner had one year, to October 4, 2017, to timely file a federal habeas petition. Here, Petitioner constructively filed his initial federal Petition on July 29, 2018, nearly 10 months after expiration of the statute of limitations, again absent tolling.

### 1. **Statutory Tolling**

AEDPA provides for statutory tolling, specifically that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After the denial of his administrative appeal on October 4, 2016, Petitioner filed a state habeas petition in the Imperial County Superior Court on February 6, 2017, which was denied on March 6, 2017. (*See* ECF Nos. 19-4, 19-5.) The superior court indicated Petitioner's delay in filing after the denial of his appeal was likely unreasonable, stating: "Petitioner exhausted his administrative remedies at the Third Level of Review on October 4, 2016. He does not offer any explanation for his four month delay in filing his petition, which, standing alone, is a basis for denial." (ECF No. 19-5 at 1.) As discussed below, it is unclear on the present record whether and to what extent any statutory tolling is available.

10

1          This is first because instead of immediately pursuing appellate review in a higher

2    state court, Petitioner filed multiple motions for reconsideration and an amended petition

3    in the superior court; he did not pursue relief in a higher court until he constructively filed

4    a habeas petition in the California Court of Appeal on May 18, 2018.  *See Evans v. Chavis*,

5    546 U.S. 189, 193 (2006) ("As long as the prisoner filed a petition for appellate review

6    within a 'reasonable time,' he could count as 'pending' (and add to the 1–year time limit)

7    the days between (1) the time the lower state court reached an adverse decision, and (2) the

8    day he filed a petition in the higher state court."), citing *Carey v. Saffold*, 536 U.S. 214,

9    222-23 (2002).  In this case, the state appellate court found Petitioner's habeas petition

10   untimely, reasoning as follows:

> Blanco is not entitled to habeas corpus relief.  The petition, filed 18
> months after he exhausted his administrative remedies and more than 14
> months after the superior court denied his first petition for writ of habeas
> corpus, is untimely.  (See, e.g., *In re Sanders* (1999) 21 Cal.4th 697, 703
> [petition must be filed 'reasonably promptly'].)  Once the superior court
> denied Blanco's first petition, the correct procedure was to file a new petition
> in this court, not repetitive and successive petitions in the superior court.  (See
> *In re Clark* (1993) 5 Cal.4th 750, 767 fn. 7.)

17   (ECF No. 19-8 at 2, *In re Ivan Blanco on Habeas Corpus*, D074017 (Cal. Ct. App. May

18   25, 2018).)  Thus, it is evident that Petitioner did not file his habeas petition in the state

19   appellate court within a "reasonable time" such that the fourteen months that elapsed

20   between the initial denial in superior court and filing in the state appellate court would also

21   warrant statutory tolling.  *See Velasquez v. Kirkland*, 639 F.3d 964,  967-68 (9th Cir. 2011)

22   (applying "Supreme Court's thirty-to-sixty-day benchmark for California's 'reasonable

23   time' requirement," noted in *Evans*, 546 U.S. at 200-01, to find delays of 81 and 91 days

24   unreasonable, and collecting cases where circuit court held that delays of 101, 115 and 146

25   days were unreasonable), citing *Chaffer v. Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010)

26   (per curiam) and *Banjo v. Ayers*, 614 F.3d 964, 970 (9th Cir. 2010).  Here, the California

27   Court of Appeal explicitly held the habeas petition Petitioner filed in that court was

28   untimely, and this Court must defer to that holding.  *See Valdez v. Montgomery*, 918 F.3d

18cv1909 CAB (AGS)

687, 692 (9th Cir. 2019) ("If a California court has held that a state habeas petition was timely or untimely, we are bound by that decision."), citing *Robinson v. Lewis*, 795 F.3d 926, 929 (9th Cir. 2015).   As such, the state appellate court petition was clearly not "properly filed" and does not assist Petitioner in calculating the time limitations.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's [post-conviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2).")   Similarly, the petition filed in the California Supreme Court on May 30, 2018, and denied on July 11, 2018, is unlikely to assist Petitioner, given that the state supreme court denial was issued without a statement of reasoning and is therefore presumed to rest on the same grounds as the state appellate court decision, which rejected the prior state petition as both untimely and for lack of merit.  *See Ylst*, 501 U.S. at 803.

Second, it is unclear not only whether Petitioner is entitled to statutory tolling for the time the initial habeas petition was pending in superior court, which the superior court indicated was untimely,[4] but also whether the time between the initial petition, the two later petitions for rehearing, and the amended petition filed in the superior court, as well as the pendency of those later petitions, could also be statutorily tolled.  The Ninth Circuit has allowed that statutory tolling may be available for the time between petitions filed in the same state court, if a two-part test is satisfied, as follows:

> First, we ask whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition. If not, these petitions constitute a "new round" and the gap between the rounds is not tolled. But if the petitioner simply attempted to correct the deficiencies, then the petitioner is still making proper use of state court procedures, and his application is still "pending" for tolling purposes.... We then ask whether they

---

[4] Again, in addition to denying the petition on the merits of his claim, the superior court indicated Petitioner's delay in filing was likely unreasonable, stating: "Petitioner exhausted his administrative remedies at the Third Level of Review on October 4, 2016.  He does not offer any explanation for his four month delay in filing his petition, which, standing alone, is a basis for denial."  (ECF No. 19-5 at 1.)

1
2

> were ultimately denied on the merits or deemed untimely. In the former event, the time gap between the petitions is tolled; in the latter event it is not.

3
4
5

*Stancle v. Clay*, 692 F.3d 948, 953 (9th Cir. 2012), quoting *King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003) (per curiam), abrogated on other grounds by *Evans*, 546 U.S. 189; *see also Banjo*, 614 F.3d at 968-69 (same).

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

In this case, the Court has not been provided with copies of any of the petitions (including the initial petition, the two petitions for rehearing or the amended petition each mentioned in the state appellate court denial) filed in the state superior court.  As such, it is unclear on the present record whether in any of those later filings Petitioner "simply attempted to correct the deficiencies" in prior petitions such that the superior court application may have remained "pending" for purposes of tolling.  *See Stancle*, 692 F.3d at 953, quoting *King*, 340 F.3d at 823.  The record also fails to include copies of the superior court decisions concerning the two petitions for rehearing, so it is also unknown "whether they were ultimately denied on the merits or deemed untimely," which is also crucial to a determination on the availability of tolling.  *Id.*  The superior court decision denying Petitioner's April 3, 2018 amended petition appears to indicate that the two prior petitions for rehearing were denied due to procedural deficiencies but does not specifically reference the reason for their denial as relevant to the instant analysis.  (*See* ECF No. 19-6 at 2) (noting that in the April 18, 2017 petition for rehearing Petitioner "provided the court with neither any legal authority for such a rehearing procedure, nor any demonstration of any basis upon which the court should revisit its prior decision, so the petition for rehearing was denied," and that the second petition for rehearing "referred[ed] to California Rules of Court, rule 8.268, which applies to Courts of Appeal and the California Supreme Court, but not the Superior Court," and "[t]his petition was also denied.")

25
26
27
28

Nor does the record before the Court reveal how long either of the two petitions for rehearing were pending before the superior court.  The record reflects that the initial superior court petition was pending between February 6, 2017 and March 6, 2017 and the amended petition was pending between April 3, 2018 and April 30, 2018.  The state

appellate court indicated that two petitions for rehearing were filed in superior court on April 18, 2017 and May 30, 2017 (*see* ECF No. 19-8) and while the superior court's April 30, 2018 order denying the amended petition indicates the petitions for rehearing were ultimately denied (*see* ECF No. 19-6 at 2), the dates of those denials, and thus the amount of time those petitions were pending, appear to be unavailable on the present record.  This record not only lacks information about whether more than one superior court filing could provide grounds for statutory tolling, but also lacks information as to the amount of tolling that is even potentially available.

In any event, it appears unnecessary to reach a definitive conclusion on this matter, as Petitioner bears the burden to demonstrate that the statute of limitations is adequately tolled and does not attempt to argue that statutory tolling renders his federal petition timely; Petitioner instead asserts only that he is entitled to equitable tolling for the period between the March 2017 denial of the initial superior court petition and the filing of the May 2018 appellate court petition identified by Respondent.  (*See* ECF No. 21 at 3-5); *see Banjo*, 614 F.3d at 967 ("[Petitioner] bears the burden of proving that the statute of limitation was tolled."), citing *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002), abrogated on other grounds by *Pace*, 544 U.S. 408; *see also Zepeda v. Walker*, 581 F.3d 1013, 1019 (9th Cir. 2009) ("[Petitioner] bears the burden of demonstrating that the AEDPA limitation period was sufficiently tolled."), citing *Smith*, 297 F.3d at 814 (footnote omitted).  Moreover, the Court finds no need to develop the record in this regard further because, as discussed below, the sole claim also fails on the merits.

### 2.   Equitable tolling

Respondent generally maintains that Petitioner is not entitled to tolling for the time between the March 2017 superior court denial of his initial habeas petition in that court and the May 2018 filing of his state appellate court petition.[5]  (ECF No. 18 at 12.)  In the sur-

---

[5] Respondent asserts 442 days elapsed between the March 6, 2017 superior court denial and the May 23, 2018 state appellate court filing.  (ECF No. 18 at 12.)  Yet, as noted above,

reply, Petitioner asserts the Court should grant equitable tolling for the period in between the superior court denial and filing in appellate court because "Petitioner is a Mexican national and does not speak the English language," and cites *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006), in support of his argument.  (ECF No. 21 at 3-5.)   Specifically, Petitioner contends that "the institutional libraries at Centinela State Prison, Kern County Jail (where Petitioner was detained for approximately 40 days for prosecution between September and October 2017 (See Exhibit-5; Abstract of Judgment)) and Pelican Bay State Prison, did not stock Spanish law books nor did they employed [sic] Spanish speaking knowledgable [sic] Clerks trained in the law whom [sic] could have helped and guided this Petitioner with the process of the applicable intricate laws involved herein," and "[t]he only reason Petitioner is able to proceed herein now is that I have met another inmate at Pelican Bay State Prison with a little knowledge in the law who is able to speak Spanish and willing to help me, this person is Fidel Salcedo."  (*Id.* at 3-4.)  He argues that the delay "is no fault of this Petitioner, the law libraries mentioned lacked Spanish-written books, Spanish-speaking law clerks, Spanish-speaking librarians, and this Petitioner lacked the funds to procure professional counsel to help him with his application," and contends that equitable tolling is warranted "because he has no knowledge in the law, he is a layman who is dependent upon others to litigate his cause."  (*Id.* at 5.)  In an accompanying declaration, Petitioner generally states that: "The law libraries in all of the prisons and jails I have been at since this sue [sic] was started lacked the personnel who speaks my language and the [sic] all lacked the books in Spanish for me to understand what path to take in order to rightfully accomplish my legal deeds."  (*Id.* at 11.)  Petitioner also submits the declaration of Fidel Salcedo, the inmate who assisted Petitioner in pursuing his case in this Court, and

---

Petitioner constructively filed the state appellate court petition on May 18, 2018 and it therefore appears 438 days elapsed between the initial superior court denial and state appellate court filing.  For the reasons discussed below, this slight difference does not impact the outcome of the equitable tolling analysis.

Salcedo confirms the lack of Spanish-speaking staff or legal materials at Pelican Bay and Petitioner's "next to nil" ability to communicate in English.  (*See id.* at 4, 11-12.)

In *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court held that "§ 2244(d) is subject to equitable tolling in appropriate cases."  *Holland*, 560 U.S. at 645.  In so concluding, the Supreme Court noted that "[w]e have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Id.* at 649, quoting *Pace*, 544 U.S. at 418.  The Ninth Circuit further instructs that: "Like any equitable consideration, whether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas court which may be guided by 'decisions made in other similar cases.'"  *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011), quoting *Holland*, 560 U.S. at 650.

Specific to Petitioner's assertion, the Ninth Circuit has held that a non-English speaking petitioner could in some circumstances demonstrate "extraordinary circumstances" stemming from his or her inability to procure legal materials or language assistance in a timely manner.  For instance, in a case where a Spanish-speaking petitioner contended that the lack of Spanish-language materials or assistance prevented him from learning about the AEDPA deadline and filing his petition within the statutory deadline, the Ninth Circuit concluded that a "combination of (1) a prison law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain translation assistance before the one-year deadline, could constitute extraordinary circumstances."  *Mendoza*, 449 F.3d at 1069.  In so holding, the Ninth Circuit instructed that "a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source."  *Id.* at 1070; *see also Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) ("Lack of English proficiency can constitute an extraordinary circumstance for equitable tolling purposes, but only when the petitioner is unable to

procure legal materials in his own language or to obtain translation assistance."), citing *Mendoza*, 449 F.3d at 1070.

While Petitioner contends that several of the facilities where he has been incarcerated, including Centinela State Prison, Kern County Jail, and Pelican Bay State Prison, each lacked Spanish-language law books or Spanish speaking clerks, the record in this case fails to support a conclusion that Petitioner was unable to obtain assistance during the statutory limitations period. The record reflects that Petitioner was incarcerated at Centinela at the time of the RVR in April 2016 as well as when his administrative appeal was denied in October 2016. Petitioner also appears to have remained at Centinela until at least June 2017, as a March 2017 mailing was sent to Petitioner at that institution, Petitioner's April 2017 appeal of a separate RVR indicates he was at Centinela at that time, and Petitioner's June 2017 RVR modification similarly lists Centinela as his place of incarceration. (*See* ECF Nos. 19-5 at 4; 13-1 at 2; 13-2 at 2.) Yet, contrary to Petitioner's assertion that Centinela's lack of Spanish-language materials or assistance obstructed his ability to proceed, Petitioner not only filed a petition in the state superior court in February 2017 but also filed two petitions for rehearing in the superior court in April and May of 2017. (*See e.g.* ECF No. 19-8 at 1.) Thus, despite the asserted lack of materials or translation assistance at Centinela, it is evident Petitioner continued to pursue his case during at least part of his time at that institution.

Even to the extent the lack of Spanish language materials or translation assistance created obstacles to the pursuit of Petitioner's case while he was at Kern County Jail, Petitioner acknowledges he was only there for "approximately 40 days" in September and October 2017. (*See* ECF No. 21 at 3.) Petitioner was transferred to Pelican Bay in early November 2017 (*see id.* at 19), sometime after which Petitioner indicates he procured assistance from another inmate at that institution. The next filing in Petitioner's case was an amended petition filed in the superior court in April 2018 and Petitioner did not pursue his case in the state appellate court until he constructively filed a petition on May 18, 2018, more than fourteen months after the denial of his superior court petition on March 6, 2017.

While Petitioner contends that the lack of materials and assistance at those three institutions prevented him from timely proceeding and "[t]he only reason Petitioner is able to proceed herein now is that I have met another inmate at Pelican Bay State Prison with a little knowledge in the law who is able to speak Spanish and willing to help me," (*see id.* at 4), the multiple petitions filed in superior court during the time Petitioner was incarcerated at Centinela and while the AEDPA statute was running undercuts the persuasive force of any argument that the lack of Spanish language assistance or materials at that institution constituted "extraordinary circumstances" that prevented Petitioner from pursuing his case during the limitations period.  *See Mendoza*, 449 F.3d at 1070 ("[A] non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source.")

Additionally, by Petitioner's own admission, he obtained assistance sometime after his transfer to Pelican Bay, which records show took place in November 2017, but does not explain the several month delay before the April 2018 superior court filing or May 2018 filing in state appellate court.[6]  Not only does this also significantly weaken Petitioner's assertion of extraordinary circumstances but also appears to undermine a potential finding of diligence.  *See Holland*, 560 U.S. at 649 ("[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."), quoting *Pace*, 544 U.S. at 418.  Petitioner does not explain how he was able to file a superior court petition, two petitions for rehearing in the superior court, and an amended petition in the superior court (all filed during the first half of 2017), when he

---

[6] Neither Petitioner in his briefing or declaration, nor Salcedo in his declaration, indicate when Petitioner sought or received Salcedo's assistance nor does either address the time that elapsed between Petitioner's arrival at Pelican Bay and his next state court filing.

contends that the lack of Spanish-language materials or translations assistance until after his arrival at Pelican Bay (in November 2017) made the pursuit of his case prior to that time, and timely filing, impossible.  (*See* ECF No. 21 at 4.)  Instead, in his declaration, Petitioner simply and generally states that "[t]he few individual [sic] I have manage [sic] to find to help me are very limited in the law and about all of them transfer or go home in short periods after knowing them."  (*Id.* at 11.)

It is instead apparent on this record that Petitioner was not without at least some assistance during the running of the limitations period, given that he filed an administrative appeal at the prison and numerous filings in superior court despite his lack of English-language ability and the lack of Spanish-language materials.  It is also therefore evident that it was not impossible for him to file during the limitations period such that equitable tolling is warranted.  *See e.g. Yeh*, 751 F.3d at 1078 ("Since Yeh received assistance in translation during the relevant time period, his lack of linguistic understanding could not have made it 'impossible' for him to meet the deadline."); *see also Doe*, 661 F.3d at 1011 ("Like any equitable consideration, whether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas court which may be guided by 'decisions made in other similar cases.'"), quoting *Holland*, 560 U.S. at 650.

On this record, Petitioner fails to demonstrate that the lack of translation assistance or Spanish-language materials constituted an extraordinary circumstance that prevented him from timely filing during the AEDPA limitations period.  Accordingly, the Court is not persuaded that equitable tolling is appropriate.

### C.   <u>Merits</u>

In the alternative, Respondent contends that "even if his Petition was timely filed, Blanco is still not entitled to any relief because he has failed to allege, let alone show, that the state-court decisions in this matter that upheld the disciplinary action were contrary to or an unreasonable application of clearly established federal law or that they involved an unreasonable determination of the facts of his case."  (ECF No. 18 at 9-10.)  Petitioner insists that the evidence was insufficient to find him guilty of possession of alcohol and

19

that the state court denial constituted an abuse of discretion.   (ECF No. 4 at 6-9.) Specifically, Petitioner alleges that the hearing was deficient, as follows:

> Petitioner did not have knowledge that inmate Sanchez had the pruno in the cell because he was at school and the pruno was found in inmate Sanchez mattres [sic] and inmate Sanchez admitted to having the pruno in his possession.  The reporting officer did not testify at the 115 hearing, the hearing officer found petitioner guilty based on the written report only.  It appear [sic] that the hearing officer did not meet it [sic] burden of proof that the liquid was in fact pruno and that the petitioner had knowledge that the pruno was in the cell while he was at school, however petitioner did prove that he had know [sic] knowledge the pruno was in the cell at the time of the search by the admission of inmate Sanchez, who from the outset admitted the pruno was he's [sic].  The officer that conducted the search stated that the only inmate in the cell was inmate Sanchez at the time of the search.

(*Id.* at 7-8.)

   "Where a prison disciplinary hearing may result in the loss of good time credits, [the Supreme Court in] *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  The Supreme Court has additionally held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."  *Hill*, 472 U.S. at 455.  The *Hill* Court further stated that: "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455-56.

   As stated above, the Court will look through the California Supreme Court's silent denial to the reasoned opinion issued by the California Court of Appeals.  *See Ylst*, 501

U.S. at 803; *see also Wilson*, 138 S.Ct. at 1193.  With respect to the merits of Petitioner's claim, the state appellate court reasoned and concluded in relevant part that:

> The petition also lacks merit.  A court will uphold a prison disciplinary decision against a challenge to the sufficiency of the evidence provided "some evidence supports the decision by the prison disciplinary board to revoke good time credits."  (*Superintendent v. Hill* (1985) 472 U.S. 445, 455.)  "(T)he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  (*Id.* at pp. 455-456.)  Based on the report of the correctional officer who searched Blanco's prison cell and found inmate-manufactured alcohol in a place accessible to Blanco, the disciplinary hearing officer reasonably could conclude Blanco did "possess, manufacture, or have under (his) control any controlled substance, medication, or alcohol."  (Cal. Code Regs., tit. 15 § 3016, subd. (b).)  Blanco's claim his cellmate took full responsibility for the alcohol "does not change the analysis under *Hill*.  *Hill* emphasizes that the reviewing court is not to engage in an 'examination of the entire record' or 'weighing of the (conflicting) evidence.'  (Citation.)  Rather the narrow role assigned to the reviewing court is solely to determine whether there is '*any evidence* in the record that *could support* the conclusion reached by the disciplinary board.'  (Citation.)  Here, there is such evidence, even if, as (Blanco) contends, there is other evidence that supports his assertion of innocence."  (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1500.)  The guilty finding authorized the disciplinary hearing officer to assess a forfeiture of credits ranging from 91 through 120 days.  (Cal. Code Regs., tit. 15 § 3323, subd. (e)(10).)  The evidence was therefore sufficient to support the discipline imposed.

(ECF No. 19-8 at 2, *In re Ivan Blanco on Habeas Corpus*, D074017 (Cal. Ct. App. May 25, 2018).)

Upon review, it is evident that the state court correctly and reasonably concluded that Petitioner's claim of constitutional error was without merit.  As an initial matter, Petitioner does not dispute that the requirements set forth in *Wolff* were met, and a review of the record confirms that they were satisfied.  Petitioner was provided written notice of the charges in advance of the disciplinary hearing and was also assigned an assistant/translator to both consult with him prior to the hearing and assist at the hearing itself.  (*See* ECF No. 19-2 at 3) (reflecting that on 4/25/16 A. Sanchez was assigned to serve as Staff Assistant at Petitioner's 4/27/16 hearing, who states that he contacted and

met with Petitioner to inform him of the charges, procedures, and the possible penalties and "explained to Inmate Blanco his rights concerning this hearing and that I would be present at the hearing to aid him in helping him to understand the decision reached," to which Petitioner indicated his understanding and readiness to proceed, and noted that "[d]ue to Inmate Blanco's inability to understand and speak the English language I was assigned as his translator."); (*see also* ECF No. 19-3 at 1-3) (disciplinary hearing results report reflects copy of RVR was served on Petitioner on 4/21/16 and that A. Sanchez, Corrections Officer, was assigned as Staff Assistant on 4/25/16).   While Petitioner's request to have Juan Sanchez, his cellmate, testify at the hearing was denied, records reflect that the hearing officer "determined that the witness has no relevant or additional information," but entered an agreed-upon stipulation that: "If present SANCHEZ would state the alcohol was his (SANCHEZ) and Blanco did not know anything about it."  (ECF No. 19-3 at 4-5.)   Finally, the record reflects that a written report was generated which noted in relevant part that "[t]he following evidence submitted was considered in reaching this finding, and does substantiate the charges," and outlined the evidence and conclusions reached as follows:

> The RVR written by Officer F. Soria, stating in part: I was conducting a random cell search in A2 Cell 227, assigned to Inmates Sanchez, AP5828, A2-227U, and Blanco, A2-227L, I entered the cell and smelled a strong pungent odor of alcohol.  I discovered a clear plastic bag containing approximately 5 gallons of inmate manufactured alcohol (Pruno), wrapped inside a state mattress on the upper bunk.  The pruno was a brownish liquid, pulpy in color with a strong odor of fermenting fruit (Crushed Apples).  No other contraband was discovered.  I disposed of the pruno by dumping it down the toilet. [¶] SHO notes: It is clear BLANCO willfully had access to the Alcohol, therefore; had constructive possession of the Alcohol.

(ECF No. 19-3 at 5.)

It is also apparent that the state court reasonably found the record provided "some evidence" supporting the decision to assess Petitioner a loss of 91 days of good conduct credits.  *See Hill*, 472 U.S. at 455.  Petitioner cites state decisional law and penal code sections purporting to support his contention that the disciplinary decision was made in

error because Petitioner did not have constructive possession of the alcohol due to a lack of control or right to control the contraband, since the alcohol was found in Petitioner's cellmate's bed/mattress, which was not assigned to Petitioner. (ECF No. 21 at 6-10.)  Yet, *Hill* clearly instructs that the role of a reviewing court "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455.  As Petitioner acknowledges, the correctional institution rules outlined in the California Code of Regulations define possession as "either actual possession or constructive possession of an object.  Actual possession exists when a person has physical custody or control of an object.  Constructive Possession exists where a person has knowledge of an object and control of the object or the right to control the object, even if the person has no physical contact with it."  15 CCR § 3000.  While Petitioner asserts that the hearing officer in his case could not have found evidence sufficient to conclude Petitioner had the requisite knowledge, control or right to control over the pruno in his cellmate's mattress in order to have concluded Petitioner constructively possessed the alcohol (*see e.g.* ECF No. 21 at 7), again, the role of this Court is not to reweigh the evidence presented at the hearing itself but only to decide if the state court was reasonable in concluding that "some evidence" supported the findings.  *Hill*, 472 U.S. at 455.  Here, the state court reasonably found "some" evidence in the record supported the findings.

As the Third Circuit recently concluded in a situation where a petitioner argued that constructive possession required a showing of both control and knowledge, citing similar decisions from both the Seventh and Eighth Circuits: "Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits." *Denny v. Schultz*, 708 F.3d 140, 145 (3rd Cir. 2013), citing *Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1992) and *Flowers v. Anderson*, 661 F.3d 977, 980-81 (8th Cir. 2011).  The Court finds these decisions both persuasive and instructive. Again, in Petitioner's case, the reporting officer indicated that upon entering the cell there

was a "strong pungent odor of alcohol" and found "a clear plastic bag containing approximately 5 gallons of inmate manufactured alcohol (Pruno), wrapped inside a state mattress on the upper bunk." (ECF No. 19-3 at 5.)  Regardless of whether the alcohol was found in his cellmate's bunk or in Petitioner's, it is apparent from the reporting officer's statement that the smell was strong and noticeable upon entering the cell such that it appears unlikely any occupant of the cell would be ignorant of either the smell or its origin, as noted in the administrative appeal denial.  (*See* ECF No. 19-4 at 1.)  Moreover, as the reporting officer indicated, given the plastic bag was not only clear but also contained five gallons of alcohol, the Court is reluctant to give credence to any assertion that not only would an occupant of the cell be unable to smell the alcohol when that smell was apparent to an officer upon entry to the space, much less to conclude that an object of that large a physical size could be secreted or concealed such that an occupant of the cell could credibly claim lack of knowledge.  On the facts presented here, the Court must conclude that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Hill*, 472 U.S. at 457; *see also Denny*, 708 F.3d at 145, citing *Hamilton*, 976 F.2d at 345-46 and *Flowers*, 661 F.3d at 980-81.

Accordingly, because Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts, habeas relief is not available.  *See Hill*, 472 U.S. at 457 ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.")

### C.  <u>Certificate of Appealability</u>

"A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'"  *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013), quoting *Slack v. McDaniel*, 529 U.S. 473, 484

(2000).  The standard required for granting a COA is "relatively low" or "modest."  *See e.g. Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002), *Silva v. Woodford*, 279 F.3d 825, 832 (9th Cir. 2002), quoting *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000).

The Court finds that a Certificate of Appealability is not merited in this case because the sole claim in this habeas action neither deserves encouragement to proceed further nor could jurists of reason find the adjudication of the issues and claim presented either debatable or wrong.

## IV. <u>CONCLUSION AND ORDER</u>

For the reasons discussed above, the Court **DENIES** the Amended Petition for a Writ of Habeas Corpus and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated:  May 19, 2020

Hon. Cathy Ann Bencivengo
United States District Judge

25

18cv1909 CAB (AGS)